BLUFORD BETHEL *et al.*, Plaintiffs in Error, *v.* JOHN C. SHARP *et al.*, Defendants in Error.

### ERROR TO JERSEY.

Where a purchaser at a sheriff's sale of land, fraudulently makes false representations to prevent competition, such facts will render the sale void.

Such purchaser is a trustee for the real owners, and his grantee, if he has knowledge of the facts, takes the property subject to all existing equities. The same rule applies to subsequent grantees.

THE complainants, Lucy Sharp and Wilburn Brown, allege themselves and Patsey Dowdall, who, with her husband, are made defendants, to be the sole heirs-at-law of one Clark Brown who died many years ago, (date not given), in Jersey county.

The bill alleges that the land in controversy, north half of north-west quarter of section one, with another tract described, was owned by Clark Brown at his death, and that he died intestate, leaving the persons above named his heirs, and Nancy, who is now the wife of Bluford Bethel, his widow.

It is further charged in the bill that Clark Brown, in 1833,

with one Morris, made a note to one Darniell, for $33 ; that Darniell indorsed it to one Finney ; that Finney's administrator, at the April term, 1846, of the Jersey Circuit Court, recovered a judgment on that note against Lucy, Patsey, and Wilburn Brown, as the heirs-at-law of Clark Brown ; that in August, 1846, an execution was issued upon the judgment to the sheriff of Jersey county, who afterwards (date not given) sold the land, which was bought by Bethel, the defendant, for the debt and costs, $81. And afterwards, on the 9th day of March, 1848, he received a deed from the sheriff, and on the 4th of October, 1848, he, with his wife, conveyed the lands to one Jesse White for the consideration of $1,000 ; that White afterwards conveyed one-half the tract to one Harper. Harper died, leaving a wife, the daughter of White, and one child, surviving him ; the child then died, being still an infant, then Mrs. Harper died, whereby the lands conveyed to Harper became the property of Jesse White and Tabitha his wife, the father and mother of Mrs. Harper, and Lewis, Balaam and Ira White, her brothers, all of whom are made defendants.

The object of the bill is to set aside the deed from the sheriff to Bethel, from Bethel and wife to White, and all the subsequent deeds. It charges that Bethel prevented competition at the sale, fraudulently and with design to obtain the land at almost a nominal price. That he has received $1,000 from White for the land, and appropriated it to his own use ; that Bethel announced at the sale of the land, in the presence of the sheriff and others, that he was buying the land for Brown's heirs. That Bethel told sundry persons — to complainants unknown, and discovery of whom is specially prayed — in the neighborhood, before the sale, and in order to prevent them from bidding there, that he was going to buy in the land for Brown's heirs, and others, whose names are unknown, that he was going to buy the land, and instead thereof enter them land more suitable, and equal in value. That said White and Bethel told Mr. Carrico, since deceased, who attended the sale, and others, not to go to the sale, as he (Bethel) was going to bid in said land for Brown's heirs. That White and Bethel fraudulently conspired together to prevent competition at the sale, that they might get the land cheap.

The bill prays a re-conveyance of the land, and general relief, and requires the defendants to answer on oath.

The defendants were all served with process, guardians *ad litem* appointed for Baalam and Ira White, infants, who answered. Bethel demurred to the bill, and the court sustained the demurrer, but it is impossible to tell precisely upon what grounds, or what changes were made by the amendments to the bill.

Bethel answered the bill, admitting the death of Brown, his own marriage with his widow, that he owned the lands, the heirship of complainants Lucy, Wilburn and Patsey; but charges that Clark Brown at his death left another child named Martha, who died in infancy; that her share (one-fourth) of the lands descended in five parts, two of such parts to his wife, Nancy, her mother, and one to the said Lucy, Wilburn and Patsey. He admits the judgment, sale by the sheriff, his purchase and deed; admits he gave but $81 for the land; charges that it was subject to the dower of his wife, and that he only obtained by his purchase the interests of the parties above named. He denies that the lands were worth as much as alleged, and denies that he bought for the heirs of Brown, or that he promised to do so, and denies all fraud; claims that he bought the land fairly, and insists upon his title as valid, and admits his sale to White.

Jesse White answered; admits the sheriff's sale to Bethel, and his own purchase; alleges the interest of Martha, the fourth child of Brown; insists upon the legal validity of the judgment and sale; claims to have bought the land from Bethel for a valuable consideration, $1,000 cash, without notice of any fraud; denies all fraud or combination with Bethel; admits conveyance of part of the land to Harper, and its descent to his wife, himself and the children, as stated in the bill. Nancy Bethel and Lewis White answer without oath by consent. Replications to answers filed, and cause referred.

The master reported the following evidence: *J. H. Coleon* testified, that he knew Clark Brown in his lifetime, and his heirs; knew his land; he owned eighty acres of prairie and eighty acres of timber; has heard Bethel talk about buying the land; heard him say he had bought it at sheriff's sale in September, 1846; Bethel came to him to get money to buy the land—eighty in prairie—and witness indorsed a note for him; Bethel told him he wanted the land to make him a home as long as he staid on it, and if the children of Brown would pay him back his money, with interest, when they became of age, he calculated to let them have the land. This conversation was before the sale. The prairie land was then worth seven or eight dollars per acre —now worth about twenty dollars per acre; the rents for the first two years were worth about $40, and the last six years about $80 per annum.

Perley Silloway, sheriff of Jersey county, made the sale to Bethel in September, 1848, on execution against the heirs. It is his impression that Bethel bought the land for the heirs of Brown; cannot say that Bethel ever told him so. There were several persons present at the sale, but no other person bid.

*Henry Lewis* testified: He was administrator of Clark Brown.

His personal property paid all the debts and a small balance over ; knows the land was sold, but was not at the sale ; in a conversation with Bethel about the time of sale, he understood from him that he bought the land for a home for himself, and that the heirs of Brown might have it by satisfying him for the purchase money and interest when they became of age.   Heard Jesse White say, about the time of the sale to him, that he thought Bethel would do the thing that was right with the children.

*William  Irwin* testified to the value of the land, fixing it, in 1846, at $7 or $8 per acre, and now at $20 or $22 per acre.

*Dennis Brown* testified : Knew all the parties ; knew all the children of Clark Brown ; they were Lucy, Wilburn, Francis and Martha ; Brown died twenty years ago ; he owned 160 acres of land—80 of timber and 80 of prairie ; knows that Bethel borrowed money and made arrangements to buy the land at sheriff's sale ; that Bethel afterwards told him he had bought the prairie ; knows that Jesse White afterwards bought the same land.   Heard Bethel tell White that he would enter forty acres of land apiece for the children, and that would be better than to keep the land.   The land was worth about $600 when Bethel bought it.

There is other evidence in the record, the important part of which is set out in the opinion ; and upon this evidence the court rendered a decree, setting aside the sheriff's deed to Bethel, Bethel's deed to White, and White's deed to Harper, and that Brown's heirs should refund to Bethel the purchase money and interest, and decreeing a lien in his favor upon the land.

The parties defendant bring the cause to this court, and assign the rendering this decree for error.

PALMER & PITMAN, for Plaintiffs in Error.

B. S. EDWARDS, for Defendants in Error.

WALKER, J.   The first question presented by this record, is, whether Bethel resorted to such fraudulent means, to prevent competition, at the sheriff's sale of the land in controversy, as rendered his purchase void as against the defendants in error. The testimony of Slaten is clear and unequivocal that Bethel prevented his attending the sale, by assuring him that arrangements had been made to settle the judgment.   This assurance was given by Bethel in reply to a statement of the witness, that he would be willing to satisfy the debt for ten acres of the land, if it could have been conveyed by the defendants in error.   This witness also states that he had designed to attend the sale, and satisfy the judgment, by bidding off twenty acres of the land.

When this evidence is considered in connection with the previous offer of Morris to pay the debt, and take a lease on a part of the place to reimburse him, together with Bethel's repeated statements, to different persons, that he intended to make the purchase for a home, and intended to let the heirs have it, upon their refunding to him the purchase money, we are irresistibly impelled to the conclusion that Bethel's design was, by these means, to prevent competition, and thereby become the purchaser at less than the one-seventh part of its value.

He must have been conscious that few persons are disposed to compete with orphans in the purchase of property, or are disposed to take their slender patrimony at a small fraction of its value ; and knowing this fact, he doubtless appealed to the better feelings of the neighbors and friends of the children, and by assuring them that the purchase was for their benefit, was enabled thereby to prevent competition, become the purchaser, prevent redemption, and acquire a sheriff's deed at almost a· nominal sum. Had it not been for his false representations, Slaten would have satisfied the debt with twenty acres of the land, and thus the loss to the heirs would have been comparatively trifling. Taking all the facts in proof into consideration, we have no hesitation in saying that they clearly establish a fraud on the part of Bethel, in preventing competition at the sale, which entitles the defendants in error, so far as his rights are involved, to have the sale avoided.

We then come to the question whether White, who was a purchaser from Bethel for a valuable consideration, was chargeable with notice, either actual or constructive. When all the evidence is considered, we think it may be fairly inferred that he knew the mode in which Bethel had acquired the land. But if in this we are mistaken, it is manifest, from the evidence, that he knew that the heirs were the equitable owners of the land, as he stated to Coleon that he would not have made the purchase of Bethel, if he had not agreed to purchase forty acres of land for each of the heirs. This he also said in substance · to two other witnesses, and another witness heard Bethel tell White that he would make such a purchase for them.

The defendants in error had the undoubted right, notwithstanding Bethel's fraud, to treat him as a trustee, and to proceed against him as such. 1 Story Eq., secs. 439, 1265. And the doctrine is equally well settled, that a purchaser of trust property, with notice of its existence, becomes a trustee, and can only hold it subject to the liability of his grantor to respond to the existing trust ; and he cannot be heard to defeat it, notwithstanding he may be a purchaser for a full consideration. 1 Story Eq., sec. 395. To permit such a purchaser to defeat the trust,

12

or equitable rights of others, when he has full knowledge of their equities, would be iniquitous and unjust, and cannot be tolerated in a court of equity. White seems to have had such knowledge, when he purchased, if we may regard his declarations, and having purchased with notice of the fraud, and the equitable rights of defendants in error, he has acquired the property as their trustee.

It may be asked, whether a conveyance of a portion of this property by White to Harper, changed the rights of defendants in error. That depended upon whether Harper was a purchaser for a valuable consideration. If he took as a mere volunteer, or with notice of the existing equities of defendants in error, he, in either event, became their trustee, and held the property, charged with their equitable rights. It is not claimed in the pleadings or evidence, that Harper paid any consideration to White for the land. And when it is remembered that he was the son-in-law of White, the presumption is that none was paid, or it would have been proved. The inference, in the absence of such proof, is that he took as a volunteer. And it appears that by his death, the land passed to his child, and by its death, to his widow, the daughter of White, and by her death, to White, and his wife, and their children. They have all of them in succession inherited the property of Harper, severally as volunteers, and as such, hold it as it was before, liable to the equities of the defendants in error.

The decree of the court below is therefore affirmed.

*Decree affirmed.*