WILLIAM D. BLOXHAM, AS COMPTROLLER, AND JOHN A. PEARCE, AS SHERIFF, APPELLANTS, VS. THE FLORIDA CENTRAL AND PENINSULAR RAILROAD COMPANY, APPELLEE.

1. Bills of review and supplemental bills in the nature of bills of review, when permissible according to the settled rules of chancery practice, may be allowed to be filed in the lower court to affect decrees rendered there, but other considerations are involved where such bills are resorted to after the decree of the lower court has been passed upon by the appellate court.

2. When the appellate court affirms the decree of the lower court, or when such decree is modified on appeal either as to questions of law or fact necessarily involved, with directions for further proceedings consistent with the opinion, the lower court has no authority to open the case for a new trial or to enter any other judgment than that directed to be entered, unless authority to do so be expressly given by the appellate court.

3. The mandate of the appellate court should be construed with reference to the opinion of the court rendered in the case in which it is issued.

4. The appellate court has the power on an independent petition filed for that purpose, after a mandate on a former appeal has been issued and lodged in the lower court and a judgment entered thereon, to grant leave to apply to file a bill of review, or supplemental bill in the nature of a bill of review. Such leave should not be granted as a matter of course, but only in the exercise of a sound discretion when it appears that good and sufficient grounds exist for filing such bill, and where the application is made on the ground of newly discovered matter the question of the materiality of the alleged new matter and laches will both arise.

5. The Supreme Court has the power in awarding on appeal the decree, whether of affirmance or reversal, to be entered by the lower court, to direct that it shall be without prejudice to the right to make application in said court for leave to file a bill of review, or supplemental bill in the nature of a bill of review, when it appears from the record in the cause that good

ground exists for making such application; and where a decree of the lower court has been modified on appeal, with directions to that court to enter a decree in accordance with the opinion rendered, and such mandate has not been obeyed, but leave granted by the lower court to file a supplemental bill in the nature of a bill of review, the Supreme Court may, in reversing the order permitting such bill to be filed and directing that judgment be entered in accordance with the former opinion, direct that the decree be entered with leave to apply to the lower court to file a bill of review, or supplemental bill in the nature of a bill of review, when, from the record before the court, good ground exists for making such application.

Appeal from the Circuit Court for Leon county.

### STATEMENT.

The mandate issued in this cause when before this court at the January Term, A. D. 1895, reads as follows, *viz:* "Whereas, lately in the Circuit Court of the Second Judicial Circuit of Florida, in and for the county of Leon, in a cause wherein the Florida Central and Peninsular Railroad Company was plaintiff, and William D. Bloxham, as Comptroller of the State of Florida, and John A. Pearce, as Sheriff of Leon county, Florida, were defendants, the decree and order of said Circuit Court were rendered November 25th, A. D. 1893, as by the inspection of the transcript of the record of the said Circuit Court, which was brought into the Supreme Court of the State of Florida, by virtue of an appeal agreeably to the laws of said State in such case made and provided, fully and at large appears;

And whereas, at the January Term of the said Supreme Court, holden at Tallahassee, A. D. 1895, the said cause came on to be heard before the said Supreme Court on the said transcript of the record, and was

JANUARY TERM, 1897.    245

Bloxham. Comptroller, etc., v. F., C. & P. R. R. Co.—Statement.

argued by counsel, in consideration whereof it was considered by said Supreme Court that the said decree of the Circuit Court holding the lines of railroad described therein as subject to taxation in 1882, 1883, 1884, 1885 and 1886, and refusing an injunction against the assessment and collection of taxes thereon for 1886, and refusing to direct a return of the taxes paid for 1882, 1883 and 1884 by the Florida Railway and Navigation Company be and is hereby affirmed, except that portion which holds the line of railroad of said appellee company from Ocala to Tampa subject to taxation aforesaid. The said decree be and is hereby reversed in so far as it makes subject to taxation, for the years named, that portion of the line of railroad of said appellee company from Ocala to Tampa, described in the bill of complaint as the line from Wildwood to Plant City, and the line from Plant City to Tampa. So much of said decree as holds that the statute under which the assessments were made, and under which proceedings are being taken by the appellants to collect taxes of the appellee company is a special statute for the collection of general revenue is unconstitutional and void, be and is hereby reversed. So much of the decree as holds that the several lines of railroad sought to be subjected to the payment of taxes herein was not assessable against the Florida Railway and Navigation Company for the years 1879, 1880 and 1881, and which enjoins the appellants from selling or attempting to sell the same, under the assessment aforesaid, or any part thereof, for the taxes of said years, or from in any manner interfering with or attempting to collect said taxes be and is hereby reversed, and the cause is remanded for further proceedings in accordance with the opinion of the court filed herein; and it

is further ordered that the appellants do recover of the appellee their costs by them in this behalf expended, taxed at the sum of seventy-three dollars and thirty cents; therefore,

You are hereby commanded, That such further proceedings be had in said cause as according to right, justice, the judgment of said Supreme Court, and the laws of the State of Florida, ought to be had, the said decree of the Circuit Court notwithstanding."

After the return of the mandate to the lower court, the appellee, complainant in the original bill in the cause, presented a petition to the chancellor for leave to file a supplemental bill, or such other pleading or amendment, for the purpose of determining certain questions mentioned arising, as alleged in the petition, by reason of newly discovered facts since the former decision in the case. The chancellor granted leave to file a supplemental bill in the nature of a bill of review, and thereupon appellee filed a bill containing the following allegations, *viz:* "Complaining showeth unto your honor, your orator the Florida Central & Peninsular Railroad Company, a corporation organized under the laws of the State of Florida.

That on or about the 2d day of November, A. D. 1892, your orator exhibited its original bill of complaint in this honorable court against William D. Bloxham as Comptroller of Florida and John A. Pearce as Sheriff of Leon County aforesaid, the defendants hereinafter named as defendants thereto, thereby to have it decreed that the exemption from taxation under the 18th section of the Internal Improvement Act was a continuing exemption for thirty-five years after the completion of the several lines of railroad constructed on the routes in said act designated, and

that said exemption attached to the *rem* following the the property into the hands of this complainant; (2) to have a decree for the recovery by the complainant, as successor to the rights therein of the Florida Railway and Navigation Company of $140,812.47 paid by said last named company in 1885 for taxes of 1882, 1883 and 1884 to the State of Florida, alleged to have been illegally assessed and to have been paid under duress and upon protest, and (3) to enjoin the collection by these defendants of taxes assessed in 1885 against property now owned by the complainant for the years 1879, 1880 and 1881 which were sought to be collected under the provisions of the statutes, Chapters 3558 and 4073 laws of Florida.

That in said bill of complaint it was stated that your orator became possessed of the railway property upon which has been assessed the tax complained of on the 1st day of May, 1889, and that your orator was then organized as a corporation for the purposes of operating and owning such railroad, by William Bayard Cutting and associates, who had been owners and holders of certain bonds and other evidences of indebtedness of the Florida Railway and Navigation Company, a company that before and until then owned and operated such lines of railway and that being such creditors of said company, and having no other interest therein, than as such creditors, they had been obliged to buy the railroads aforesaid at a judicial sale made and had in the enforcement of the liens for the security of such bonded indebtedness. That the said Florida Railway and Navigation Company, was a corporation under the laws of Florida created by the consolidation of certain separate lines of the railways here involved, towit: of the Florida Central and West-

ern Railroad and the Transit and Peninsular Railroad and other companies, the Fernandina and Jacksonville Railroad Company and the Leesburg and Indian River Railroad Company, on the 29th day of February, A. D. 1884, and that such consolidation was made by radical changes in the holdings of the capital stock of said company, and with the result that more than one-half in value of the holdings in such Florida Railway and Navigation Company was by the acquirement of the interest of new holders therein not before interested in the one and the other of said constituent companies. That the Florida Central and Western Railroad Company was a corporation under the Laws of Florida, organized thereunder by Edward J. Reed and his associates, who by deed from the said Reed became invested with the property in that line of such railroad as lies between Jacksonville and Chattahoochee river, which said last named line of railroad in said bill was alleged to have been sold under decrees of foreclosure under the lien of the statutory mortgage created by chapter 1716 of the laws of Florida to the said Edward J. Reed.

And it was further stated in said bill that the Florida Transit and Peninsular Railroad Company was created as a corporation under the laws of Florida by the consolidation on the 22d day of December, A. D. 1882, of certain railroad corporations under the laws of Florida, to-wit: The Atlantic, Gulf and West India Transit Company, the Peninsular Railroad Company and the Tropical Florida Railroad Company. That before these several consolidations each of the afore named constituent railroad companies were entirely independent corporations, each with their separate organizations and capital stock and owners of sepa-

rate and distinct parts of said line of railroad, viz: The Florida Central and Western Company of the line from Jacksonville to Chattahoochee and branches to Monticello and St. Marks, with its distinct debts and liabilities as stated in said original bill; the Florida Transit and Peninsular Railroad Company of the lines from Fernandina to Cedar Keys, and the Fernandina and Jacksonville Railroad Company, with its line from Hart's Road to Jacksonville, both of which had also their separate and distinct bonded indebtedness and liabilities, as also set forth in said bill, and the Leesburg and Indian River Company, with its line from Wildwood to Leesburg; and the effect of the consolidations, as to the changes in interest and ownership, was in each case as hereinbefore stated. The said original bill also charged that the name of the West India Transit Railroad Company was formed by certain parties who purchased the same at a sale made by a master under a decree of the Circuit Court of the United States, but at the time of said sale was not stated in said bill.

That the defendants were duly served with process in said original cause, and made answer thereto in the nature of plea, demurrer and answer, admitting the statutory exemption, but contending that the same did not exist in favor of your orators, or of the Florida Railway and Navigation Company, but that such was for the benefit only of the company constructing the particular part of railroad on the above indicated routes; that for like reason complainant was not entitled to recover the money paid on account of the taxes for the years 1882, 1883 and 1884, and to the effect that notwithstanding the changes of ownership of the taxed property between the years of 1879, 1880 and

1881 for the taxes on which it was assessed and the 18th day of October, 1885, when it was actually and for the first time assessed or attempted to be collected, that it was lawful and proper to levy the tax as it was done on the property for such years notwithstanding the changes of ownership. Replication was filed, and before further proceedings the case was heard before your honor in November, 1893, on application for injunction *pendente lite*. At this hearing no contention was made by the defendants that the company that was assessed in 1885 was the owner of the property, or had any interest therein in the years 1879, 1880 or 1881, or either of them, but the issue was fully and unequivocally made that it was competent to tax the property for the taxed years in the hands of strangers in the years when assessed. And upon these issues it was stipulated that the decree to be made should be a final decree.

Later, and in said month of November, it was decreed that the complainant was not entitled to the exemption from taxation as claimed and was not entitled to the return of the money paid for taxes and enjoined the collection by the defendants of the taxes assessed for the years 1879, 1880 and 1881.

The parties each appealed from the decree of this honorable court, the defendants here, there assigning as error the decree of this honorable court as last above stated.

That afterwards and on the 19th day of March 1895 the Honorable Supreme Court of Florida passed its judgment on said appeal, and affirmed the decree of this court on the two first propositions in said decree and on the third proposition thereof affirmed it in part and reversed, in part, deciding in effect that while the

State did not have the power to follow this property for the taxes of 1879, 1880 and 1881 by assessment in 1885 if it had in the interval gone into the hands of innocent purchasers for value, the Florida Railway and Navigation Company was found not to be such innocent purchasers, and remanded the cause for further proceedings.

And your orator further showeth by way of supplement, that it has since discovered, and the fact is that the line of railroad between Lake City and Chattahoochee River was wholly owned by a railroad corporation known as the Jacksonville, Pensacola and Mobile Railroad Company during the entire years of 1879, 1880 and 1881, and until the first day of January, A. D. 1882. That it was wholly in the possession of said last named company, or in that of receivers appointed by the United States Circuit Court for the Northern District of Florida in suits for the enforcements of liens to secure the payments of the bonds of the State of Florida, issued under chapter 1716, laws of Florida, and that while it is true that there was a sale of said line of railroad under a decree in said cause made in September, 1879, it is not true as alleged in said bill that the said E. J. Reed was the purchaser but the purchasers were Henry R. Jackson, Charles H. Simonton and Adolph Engler. And it is not true that Reed or these purchasers went into the possession of said line of railroad at that time, but the facts are, as your orator has lately discovered, that there was an appeal from the decree in said cause to the Supreme Court of the United States, and supersedeas thereunder, and although there was confirmation of said decree by the Supreme Court of the United States at the term thereof in 1880–1881, the aforesaid sale was not confirmed

until after the first day of September, A. D. 1881, and the purchasers at such sale never perfected their purchase, and never paid the purchase price, and never received any deeds to the property, and were never admitted into the possession of said property, nor to the receipt of its revenues, and never had any ownership therein until after the date of said confirmation and on or after, to-wit: The first day of January, A. D. 1882, and that as to the line of railroad between Lake City and Jacksonville the same was held, owned and operated by a company known as the Florida Central Railroad Company during all the years of 1879, 1880 and 1881, and the Edward J. Reed who bought the said line at judicial sale under the decree in like enforcement of said statutory liens at a sale made on January 6, 1882, was himself and his associates an entire stranger to said property always until on or about the 20th day of December, A. D. 1881, when he purchased from E. M. L'Engle and others a majority of the capital stock of said Florida Central Railroad Company, and that never until after the expiration of the year 1881 was the Florida Central and Western Railroad Company or any of its organizers or promoters in ownership, possession or control of the said line of railroad from Jacksonville to Chattahoochee River or of any part of it.

And your orator further says that there was not in 1885 any one a *bona fide* holder of stock in the Florida Railway and Navigation Company who was directly or indirectly a stockholder of any company which owned during any part of the years 1879, 1880 or 1881 either of the lines of railroad which was taxed as here complained of, but that such company and holders of stock thereon, to-wit: in the Florida Rail-

way and Navigation Company, were parties who purchased the same for value, innocent of any knowledge of any claim for the taxes of this assessment and with no means of ascertaining in any way the intention of such a claim.

Your orator says again, that it was a stranger to all of the events of the several alienations here set up, and an unwilling purchaser of the properties; that it did not have the means of ascertaining the history of such changes and alienations, as the official records of the several decrees and sales and confirmations are all long since and prior to this suit destroyed, and the head and controlling spirits of the intervening corporations are either dead, in foreign lands, or, as is almost always true when creditors are forced to buy mortgaged railroads for defaults, hostile to the new owners and unwilling to impart correct information.

And your orator further charges that it was wholly misled as to the importance attached in the Supreme Court to the statements of the several alienations, particularly with reference to the times thereof, since the same were made largely as introductory to the material allegation, that there was such change in ownership between the years for which the levy was made and the date of the assessment, as that there was a total change for value of the entire ownership, and this was not denied by defendants. That the only issue upon this point made at the preliminary hearing was one of law, as hereinbefore stated.

Wherefore, in as much as your orator was an entire stranger as aforesaid to all of the history of the ownerships of the several and separate parts of the lines of railroad so taxed under the assessment in 1885 during the years of 1879, 1880 and 1881, for which it

was taxed and has therein impleaded the defendants upon this particular point upon an issue of law as to whether when the time for the assessment and collection of taxes has passed and the taxing statute has affixed no lien to the railroad property which is real estate and the State has made no assessment nor taken any other steps to collect the same, such real estate can be pursued for such back taxes when it has gone into the hands of innocent purchasers for value and had not submitted or intended to submit the question whether the Florida Railway and Navigation Company was such innocent purchaser for value, which complainant again respectfully but earnestly insists was not raised by the pleadings, and if raised, was not supported by the facts in the case. Your orator is advised that it is material and necessary to bring the question of fact whether the said railroad company was such innocent purchasers of the railroad under the circumstances stated above at the time of such assessment, never before put in issue in order that it may 'be determined and passed upon by this honorable court, and that the law may prevail.

To the end, therefore, that the defendants may, if they can show why your orator should not have the relief hereby prayed and may upon their several corporate oaths full, true, direct and perfect answer make to all and singular the matters aforesaid as fully and explicitly as if especially thereto interrogated, and more especially that they may answer and set forth the best and utmost of their knowledge, remembrance, information and belief.

(1) Whether your orator exhibited his original bill against these defendants, when and for the purposes herein stated or otherwise, and if so, how otherwise?

(2) Whether such proceedings were not had in said cause, as hereinbefore stated, or how otherwise?

(3) Whether your orator has not at the time stated or at other and what time discovered, and is it not a fact, that the Florida Central and Western Railroad Company first owned and possessed the line of railroad when and as herein stated, or how otherwise. And is it not a fact that before such purchase it was owned and possessed as in this bill stated, or how otherwise. And whether it is a fact, as stated herein, that no party in interest in the several lines of railroad herein named and taxed for and during the years 1879, 1880 and 1881, or either of said years, did not own any interest in the said properties in 1885 as stated, or how otherwise?

(4) Whether the issue on the point of such ownership was in issue as stated in this bill, and is it not a fact that it was heard by the court on such point, as stated in this bill, or how otherwise?

(5) Whether your orator has not first been informed and is it not a fact, as stated in this bill, that it did not know the history of such changes in such sale and was not advised that the question of fact was in issue in said bill stated, or how otherwise?

And that your orator may have the same relief against the said defendants as it might have had if the facts hereinbefore stated and charged by supplement had been, as here, stated in its original bill.

And in case the defendants shall persist in collecting or attempting to collect the aforesaid tax from your orator by levy and sale of its railroad property or by other proceedings, that they may be enjoined therefrom, and that your orator may have such other

and further relief in the premises as the circumstances of its case require and to your honor shall seem meet."

The sworn petition accompanying the bill reads as follows: The petition of the Florida Central and Peninsular Railroad Company, the above named complainant, respectfully showeth that on or about the 2d day of November, A. D. 1892, your petitioner filed its bill of complaint in the Circuit Court of Leon county aforesaid against William D. Bloxham, as Comptroller, and John A. Pearce, as sheriff of Leon county, Florida, to establish the claim of the petitioner to the exemption of its railroad property in the State of Florida from taxation for State, county and municipal purposes, based upon the statute laws of said State, and especially upon the legislative act thereof, approved January 6, 1855, and generally known as the "Internal Improvement Act," and for the recovery of a sum of money, to-wit: Of one hundred and forty thousand eight hundred and twelve and .47 dollars ($140,812.47), therein alleged to have been illegally collected from a railroad company preceding the petitioner in the ownership of its present property, to whose rights thereto petitioner succeeded, for the State of Florida by duress and over the protest of said predecessor company, and to enjoin the collection of a further sum of ninety-six thousand one hundred and eighty-one and .69 dollars ($96,181.69) or thereabout, upon an alleged and void assessment made by the Comptroller of Florida on the 18th day of October, 1885, against the Florida Railway and Navigation Company upon the railroad property, now of petitioner, then of the said Florida Railway and Navigation Company, for the taxes for State and county purposes for the years 1879, 1880 and 1881 therein alleged

JANUARY TERM, 1897. 257

Bloxham, Comptroller, etc., v. F., C. & P. R. R. Co.—Statement.

to be due upon warrant of Bloxham, Comptroller, and
by levy thereunder by Pearce, as Sheriff, attempted to
be had and done by the unlawful seizure and sale of
the railroad of petitioner and praying that it be decreed
that the exemption to the petitioner of its railroad
property from taxation for State, county and munici-
pal purposes for a then and now unexpired period in-
ured to and continued to exist in favor of petitioner,
and that the defendant, Bloxham, be decreed to refund
to petitioner the aforesaid sum of $140,812.47 illegally
demanded of and collected from the owners of the
aforesaid railroad property, with interest thereon from
the date of such collection and that the defendants,
Bloxham and Pearce, Comptroller and Sheriff as afore-
said, and each of them, be enjoined by the court from
the collection of the said sum of $96,181.69, or any
part thereof, by seizure and sale of the railroad of de-
fendant, otherwise, for and on account of the claim
for taxes thereon for the years 1879, 1880 and 1881.
And your petitioner further shows that defendants,
Bloxham and Pearce aforesaid, being served with pro-
cess of subpœna, appeared to said bill, filed plea, de-
murrer and answer thereto, and upon ruling upon ex-
ceptions to such answer, filed amended plea, demur-
rer and answer thereto, admitting the existence of the
statutory exemption upon certain of the lines of the
petitioner's railroad originally and contending that
same was lost by alienation of property by company
building the particular part of said road, *i. e.*, that the
same was exemption only to the original company and
not to the property itself. That petitioner was not en-
titled to recover the money sued for, as same was due
and lawfully collected and that petitioner's property

17

was liable to the assessment made upon it for the taxes of 1879, 1880 and 1881, and assessed against the F. R. & N. Co. in 1885, when it owned the property without regard to the ownership of same in the years of 1879, 1880 and 1881. That hearing was had upon said bill and answer, before your honor, on application for the injunction hereinbefore prayed for; wherein it was on hearing argued by the parties that the properties of petitioner, to-wit: The railroad, *etc.*, which was assessed as aforesaid in 1885, against the Florida Railway and Navigation Company for the taxes of 1879, 1880 and 1881 did not belong to the last named company in either of the years for which said tax was assessed. and contended by petitioner that the Florida Railway and Navigation Company which was assessed in 1879, 1880 and 1881 was not the owner of any of such property in 1879, 1880 and 1881, and that the property in the hands of petitioner was not subject to such tax; and by counsel for defendants, that it was under the law liable thereto, without regard to the ownership thereof during the time of the taxed period. Whereupon, by agreement, after hearing as aforesaid, the case was submitted, and it was decided by decree denying to petitioner its exemption from taxation as claimed, denying its right to recover the money paid by the Florida Railway and Navigation Company and allowing to it an injunction restraining the Comptroller and sheriff from the collection of the taxes for the years 1879, 1880 and 1881 as not having been properly assessed in 1885 against the Florida Railway and Navigation Company. The parties each appealed to the Supreme Court of Florida from such decree, the defendants assigning as error in effect that the court improperly held that the assessment for the taxes on

the said railroad in 1885, for the taxes of 1879, 1880 and 1881, was not properly made against the Florida Railway and Navigation Company.   And that afterwards, on the 19th day of March, 1895, the Supreme Court of Florida affirmed the judgment of this honorable court in the first and second points of the aforesaid decree, and as to the third point of said decree it affirmed in part and reversed it in part, and by mandate returned the cause to this court.   The Supreme Court decided in effect that the State did not have the power to follow this property for the taxes of 1879, 1880 and 1881 by assessment in 1885, if it had ceased to be in the possession or ownership of the persons to whom it belonged during the time for which such assessment was made, into the hands at time of assessment of innocent purchasers for value, and reached its conclusion that any portion of this property was in 1885 in the same possession as in 1879, 1880 and 1881, or in that of their privies, by a wholly mistaken view of facts not in issue in the case as submitted, and upon an interpretation of the statements of the bill that is entirely at variance with the facts as they existed and the understanding and purport of such statements at hearing below.   By which the court above found that a portion of said property, to-wit: the railroad from Jacksonville to Chattahoochee river, with branches, was owned and operated by Edward J. Reed and associates from September, 1879, to February 8, 1882, when they organized a company known as the Florida Central and Western Railroad Company; whereas, the truth and facts are that during all these years, covering the whole of the period for which these taxes are assessed, and for the entire time between September, 1879, and January 6, 1882, a company known as the

Jacksonville, Pensacola and Mobile Railroad Company owned that part of the aforesaid line of railroad between Lake City and Chattahoochee, and it was possessed, used and operated by receivers of the United States Court, *viz:* Sherman Conant and A. B. Hawkins, who retained the possession of said road and received and retained the tolls and revenue thereof from September, 1879, the date of the sale, as alleged in the original bill, until after the said sale was confirmed in January, 1882, when, and not before, H. R. Jackson, Chas. H. Simonton and Adolph Engler, as purchasers at the sale of 1879, were admitted to the possession and ownership of said railroad in January, 1882, before which last named date Reed and his associates were not owners of and were not possessed of said property, or in any way interested therein. As to such parts of the railroad of petitioner as lies between Lake City and Jacksonville, the same was held, owned, possessed and enjoyed by the Florida Central Railroad Company, its owner, for many years until the judicial sale thereof on the 6th day of January, A. D. 1882, when it was purchased by Edward J. Reed, who for the first time became possessed of the said line of railroad, after the confirmation of such sale occurring thence after in less than ten days from the date of sale aforesaid. And in like manner as to the lines of railroad from Fernandina to Cedar Keys and Waldo to Ocala, for the lack of direct information, and because of petitioner's being as aforesaid an entire stranger to the transactions and changes of title preceding the creation of the Florida Railway and Navigation Company and its investiture of the possession of the railroad property, coupled with the fact that all records of the

judicial proceedings and sale thereunder and herein anywhere referred to had been destroyed by fire. Your petitioner says that it was not pretended authoritatively to allege in said original bill the chain of title to such parts of road into the F. R. & N. Co., but that the averments made were introductory to and subordinate to the allegation in the answer not denied, that there was such change in ownership between the dates for which levy was made and the date of assessment, as that there was an entire change of ownership of the properties, and that too for value. And that the allegations of the bill as made originally were made by the petitioners, who is a corporation that had no existence, at the time of the transactions referred to, and was not even created at the time of the making of the assessments complained of, but was formed afterwards to own and operate the said railroad properties that had been purchased by people at a judicial sale in 1887, who were unfortunate creditors of the previous owner, and who were entire strangers to the property prior to their purchase, so that petitioner was not informed of the real facts, as here stated, and was not advised of their materiality, nor put upon notice of the importance in value of a statement thereof as a deraignment of title by any issue raised in the pleadings since the narrative of title in petitioner's original bill was only in explanation of the situation at time of assessment, which justified the allegation in the bill of an entire change of ownership for value after the first of January, 1881, of the entire properties, and before the date of the assessments, to which averments issue was made by the amended answer of defendant by admission of the alleged mesne conveyances and by a denial, as upon demurrer to the bill

that such holders (in 1885) acquired any immunities
from taxation on said railroad, *etc.*   And petitioner
further alleges that it now knows that no party in in-
terest in the lines of railroad from Fernandina to Ce-
dar Keys, and Waldo to Ocala, in 1885, at the date
and time of the assessment, or in the Florida Railway
and Navigation Company, that at such day held and
owned the whole line of petitioner's railroad then in
existence, had one dollar in value or any interest of
any kind in the said lines of railroad, or either of
them, in the years 1879, 1880 or 1881.   Wherefore, in-
asmuch as petitioner was an entire stranger as afore-
said to all of the history of the ownership of the sep-
arate and several parts of the lines of the railroad
taxed as aforesaid for the years 1879, 1880 and 1881,
for and during the years it was taxed as complained of,
and as herein impleaded, the defendants upon an is-
sue of law as to whether when the time for the assess-
ment and collection of taxes has passed and the taxing
statute affixed no lien to the railroad property which
is real estate, and the State has made no assessment,
nor taken any other step to collect the same, such real
estate could not be pursued for such back taxes, when
it had gone into the hands of innocent purchasers for
value, which as to this particular portion of said orig-
inal bill was a particular issue made by the pleadings,
your petitioner is advised that it is necessary to bring
the question of fact as to whether the Florida Railway
and Navigation Company was such innocent purchaser
of such railroad at the time of such assessment, never
before put in issue, in order that it may be determined
and passed upon, and that the law and the right may pre-
vail.   Your petitioner prays that leave be granted to
it to file a supplemental bill, or such other pleading or

## JANUARY TERM, 1897. 263

Bloxham, Comptroller, etc., v. F.. C. & P. R. R. Co.—Statement.

amendment thereof, against said William D. Bloxham,. as Comptroller, and John A. Pearce, as Sheriff of Leon county, Florida, for the purpose of determining the aforesaid question, with proper and apt words to make certain the issue and to have determined the actual facts in such case, and with prayers for relief as may be proper, and for such other, *etc.*, and the petitioner avers that this petition is not interposed for vexation or delay. And the petitioner files herewith. the written asset of the defendant, W. D. Bloxham, Comptroller as aforesaid, to the making of such amendments.

The written consent referred to in the petition reads. as follows:

TREASURY DEPARTMENT, STATE OF FLORIDA,  
COMPTROLLER'S OFFICE,  
TALLAHASSEE, Oct. 11, 1895.

Hon. W. B. Lamar, Attorney-General, Tallahassee:

DEAR SIR—My letter of September 6th to Hon. John A. Henderson was only intended to express my willingness that evidence might be introduced to prove any material facts that had not been submitted to the courts. Concluding from your telegram that you gave it a broader construction, I wired Col. Henderson, withdrawing said letter, and it will not appear among the papers in the case of the F. C. & P. Railroad vs. Comptroller, and of course will not be considered by the honorable court. In withdrawing said letter I am impelled by a sense of right, to express a willingness on my part, that any new material questions—questions not submitted to the court—should be raised and passed upon according to the facts.

Very truly yours,  
W. D. BLOXHAM,  
Comptroller.

Appellants demurred to the supplemental in the nature of a bill of review on the following grounds: 1. It does not appear from the supplemental bill that any new matter has arisen since the original bill was filed, but it does appear that the pretended new matter stated therein happened and became a matter of judicial record in the Circuit Court of the United States in the Northern District of Florida prior to the filing of the original bill, and that appellee was informed thereof at the time of filing the original bill. 2. That the same claim is made in the supplemental bill as in the original bill, but upon a title totally distinct. 3. That a new case is introduced in the supplemental bill, inconsistent with and repugnant to the case stated in the original bill. 4. The facts stated and found by the Supreme Court in its opinion upon the case made in the original bill are *res adjudicata*, and appellee is estopped from setting other facts in a supplemental bill, inconsistent with and repugnant to the facts found by the Supreme Court. 5. The supplemental bill does not contain any matter to entitle appellee to any such relief as is sought and prayed for in said bill.

The demurrer was overruled and the appellants appealed from the order overruling the demurrer.

The other facts in the case are stated in the opinion of the court.

*The Attorney-General*, for Appellants.

ARGUMENT.

Two grounds of error are assigned, viz:

1. Granting leave to plaintiff to file a supplemental bill in the nature of a bill of review.

2. Overruling the demurrer to the supplemental bill.

The argument in support of the second assignment of error applies with equal force in support of the first, therefore we request the court to consider it as applicable to both.

We will now consider the several causes of demurrer in their order. It is apparent from an inspection of the supplemental bill that the new matter therein stated did not arise after the filing of the original bill, but happened prior to the filing thereof; and it is not alleged that they were discovered after it was too late to have presented them by way of amendment to the original bill.

According to the rule by which all allegations in a pleading are to be taken most strongly against the pleader we are warranted in concluding that they were known in time to have been presented by way of amendment. And for this reason the supplemental bill is demurrable. Story Eq. Plead. (10 Ed.), sec. 333; Stafford vs. Howlett, 1 Paige (N. Y.), 200; Musgrove vs. Kountze, 14 Fed. Rep. 315, 316, 317; Murray vs. King, 5 Ired. (N. C.) Equity 223.

2. It is alleged in the original bill that all that portion of plaintiff's line of railroad between Jacksonville and Chattahoochee, with branches to Monticello and St. Marks, was on the 25th day of September, 1879, sold under a decree of foreclosure to Edward J. Reed, who, together with his associates, originated a company under the general laws of the State of Florida known as the Florida Central and Western Railroad Company, which latter company was by deed of the said Reed, dated 28th of February, 1882, invested with all the rights, privileges and immunities covered by said mortgage, etc. This allegation contains an important

link in the chain of title which the plaintiff sets up to this railroad in the original bill. Yet it is alleged in the supplemental bill that this allegation is untrue, and that Edward J. Reed did not purchase this line of railroad at said sale, as stated in the original bill, but that Henry R. Jackson, Charles H. Simonton and Adolph Engler purchased thereat that part of said railroad from Lake City to Chattahoochee, with branches to Monticello and St. Marks, and that subsequently Edward J. Reed purchased that part of it from Jacksonville to Lake City at a judicial sale under a decree of foreclosure on the 6th of January, 1882. What disposition Henry R. Jackson, Charles H. Simonton and Adolph Engler made of the part of the railroad which is alleged to have been purchased by them is not disclosed by the supplemental bill, but we are left to infer that the appellee in some manner derived title thereto through them.

Therefore the appellee claims title to this part of said railroad from Edward J. Reed, in its original bill, and from Henry R. Jackson, Charles H. Simonton and Adolph Engler, in his supplemental bill. Thus the claims of appellee to this part of said railroad is founded upon title totally distinct and inconsistent and for that reason the supplemental bill is demurrable. Story Eq. Pl. (10 Ed.) sec. 339, note 1 (a) Loukin vs. Lethbridge, Cooper 42; Pilkington vs. Wagnall, 2 Madd. Rept. 240; Evans vs. Bradshaw, L. R. 8 Equity, 469–471; Godfrey vs. Tucker, 33 Beavan, 285–73; Brauner vs. Carnegys, 69 Md. 411; Oldham vs. Eboral, 1 Coopers Select Cases, 27.

3. The case introduced by the supplemental bill is in irreconcilable conflict with the facts upon which the original bill is founded and for that reason the sup-

JANUARY TERM, 1897.            267

Bloxham, Comptroller, etc., v. F., C. & P. R. R. Co.—Argument.

plemental bill should have been disallowed. Modern Equity Practice by Beach, Section 497; Strangham vs. Hallwood, 30 West Va. 274; Maynard vs. Green, 30 Fed. Rept. 643; Shields vs. Barrow, 17 Howard (U. S.) 144.

4. This court at its January Term 1895 decided in this case, that the title of Edward J. Reed and associates to the line of railroad from Jacksonville to Chattahoochee with branches to Monticello and St. Marks was acquired at a sale on foreclosure of a statutory lien on behalf of the State against the Jacksonville, Pensacola and Mobile Railroad Company in September 1879. The property was owned and operated by said Reed and his associates until February 8, 1882. On this date Reed and his associates organized a corporation under the general laws of the State of Florida under the name of the Florida Central and Western Railroad Company and on the 28th of February 1882, conveyed the property to the said corporation.

This corporation in February 1884 with other corporations consolidated into the Florida Railway and Navigation Company. This latter corporation owned the property until May 1889, and during the time the assessments complained of were made. The complainant acquired title through a purchase by one W. B. Cutting as agent at a judicial sale of the property; said Cutting and associates organized the complainant corporation.

The complainant bought and took possession with the assessment upon the property. And that the Florida Railway and Navigation Company was not such innocent purchaser as could hold the property against the State's claim for taxes. Bloxham, Comptroller, et al. vs. F. C. & P. R. R. Co., 35 Fla. Repts. 722, 723.

At the same term of this honorable court the appellee filed its petition for a rehearing, and therein alleged among other things that the court erred in its conclusions as to the facts of the history of the said railroad and their changes of ownership; but the court refused to grant a rehearing and adhered to its conclusions both of law and fact, and sent its mandate to the Circuit Court, reversing the decree of that court and directing it to proceed in accordance with the opinion of this honorable court. This decision, we contend, becomes the law of the case, and *as to the facts found, res adjudicata, and there is no mode of reversing it.* It is conclusive upon the parties to the suit, and the Circuit Court is powerless to change it or to proceed contrary to it. Wilson vs. Fridenburg, 21 Fla. Repts. 389; Tyler vs. Maguire, 17 Wallace, 283; Ex parte Sibbard vs. United States, 12 Peters, 490; Skillerns Extrs. vs. Mays Extrs., 6 Cranch. 267; Santa Maria, 10 Wheaton, 442; Marine Insurance Co. vs. Hodgson, 6 Cranch. 206; Southard vs. Russell, 16 Howard, 547; Mackall vs. Richards, 116 U. S. Repts. 45; Grier vs. Turner, 36 Ark. Repts. 17; Chouteau vs. Allen, 74 Mo. Repts. 56; Ex parte Knox, 17 So. Car. Repts. 207.

After final decision by the Supreme Court upon the merit of the case stated in the original bill a new case inconsistent therewith can not be introduced, either by way of amendment to the original bill or by way of a supplemental bill, and thereby nullify, defeat or evade the decision of the Supreme Court. Ex parte Knox, 17 South Car. Repts. 207; Chouteau vs. Allen, 74 Mo. Repts. 56.

While a court of chancery delights in doing complete justice, untrammeled by technical rules, it at the same time delights in closing in one suit all litigation

JANUARY TERM, 1897.           269

Bloxham, Comptroller, etc., v. F., C & P. R. R. Co.—Argument.

concerning the subject matter down to the time of final submission.    Otherwise it would be interminable.

But even if these objections were insufficient to defeat the supplemental bill, nevertheless the *new matter* stated therein would not entitle the appellee to the relief prayed for.    This new matter relates exclusively to the line of railroad from Jacksonville to Chattahoochee, with branches to Monticello and St. Marks, and leaves the decision unaffected as to the liability of the other lines of railroad for the taxes assessed thereon.

The purchasers of the railroad from Lake City to Chattahoochee with branches to Monticello and St. Marks, at the sale thereof in September 1879, whether those purchasers were Edward J. Reed, and associates, or Henry R. Jackson and associates, became the owners thereof upon the confirmation of said sale, and the execution of a deed of said railroad to them, and their title thereto related back to the date of the mortgage.

At the time of this sale this railroad was liable to assessment for the taxes of 1879 and the purchasers bought it subject to this liability.    It could have been assessed after said sale as the property of these purchasers.    Secs. 45 and 46, chap. 3099, laws of Florida.

These purchasers are presumed to have known of this law, and the consequent liability of this railroad to assessment for taxes thereunder; and the mere fact, that the sale was not confirmed and the purchasers title not perfected until the 6th of January 1881, cannot relieve them from the legal consequences of such knowledge and exempt the said railroad from liability to the assessment in their hands.

It is immaterial who had possession of it in the meantime.    If it was in possession of receivers, such possession was the possession of the court for the ben

-efit of the owner and such receivers should have re-turned it for assessment.

Besides it does not appear from the supplemental bill that any one purchased this railroad from Henry R. Jackson and associates, bona fide and for value, or that the Florida Railway and Navigation Company was such purchaser of it.

It is alleged in the supplemental bill that Edward J. Reed purchased a majority of the stock of the Florida Central Railroad Company on the 20th of December, 1881, and afterwards on the 6th of January, 1882, purchased its line of railroad from Jacksonville to Lake City at a judicial sale under a decree of foreclosure. This railroad was liable to the assessments complained of when Edward J. Reed became the owner of a majority of the stock of the Florida Central Railroad Company and as such stockholder he was bound to take notice of such liability.   And his subsequent purchase of this railroad at the judicial sale can not re-lieve him from the legal consequences of such notice and convert him into an innocent purchaser, for value.

We have treated this bill as a supplemental bill; but if it should be contended that it is a supplemental bill in the nature of a bill of review, then the question suggests itself, what decree is it intended to modify or reverse.   It can not affect the decree of the Circuit Court because that decree has already been reversed, by this Honorable Court, and is no longer operative. And likewise it can not affect the decree of this Hon-orable Court because a bill of review will not lie to re-verse the decree of this court.   20 Am. Dec. 160 note, Barbon vs. Searle; 1 Vern. 416, Stafford vs. Bryan, 2 Paige, 45; Kinsell vs. Feldman, 28 Iowa, 497; Jewett

vs. Dringer, 9 The Reporter, 379, (New Jersey Chan. Oct. 1879).

*John A. Henderson,* for Appellee.

#### ARGUMENT.

When we consider this case between a citizen, a corporation it is true, but not the less a citizen, which was created by the State and which had no existence prior to 1889, in its effort to avoid the payment to its parent, the State, of nearly $100,000.00, our every sense of right and justice sustains us in the contention that the sovereign can not and will not assert its claim upon technicalities, nor under any strict rules of construction assume positions of advantage in favor of itself, or of others in interest to whom it may have farmed out a portion of its sovereignty, which are at variance with the actual facts.

If the Florida Railway and Navigation Company, against which company the tax in controversy was assessed in 1885, or its privies owned the property in 1879-81 upon which the assessment was then made, then, however hard the situation, the legal liability is upon the appellees. But this amended pleading distinctly says that such was not the case, and says that the owners in 1885, were neither the owners in 1879–81 nor their privies. And in support of this statement, and in explanation, not in excuse, of previous statements made in original pleading, it says:

That the original case was not heard and decided upon an issue which embraced any such assumption or contention, but upon the expressed admission of different ownership, and contention by the State's counsel that the tax was properly to be collected out

of the property notwithstanding such change of ownership.

Record page 3 for statement in bill, and the admission of appellants by demurrer, p. 21.

And the reason for not bringing to the attention of this court the history of the ownership for the years 1879, '80 and '81 in the original bill as stated and done in the supplemental pleadings, is admittedly accounted for upon the facts stated in the latter, that when made in the former they were made by a stranger, without knowledge and with no correct information available to it nor accessible by reasonable dilligence; that such statements by the very nature of the contentions on behalf of the State were immaterial, i. e., were not responsive to the issue on which the case was tried, and that it was not until the decision in the former cause by this court that appellee was put upon notice of the materiality of the statements, nor on enquiry of the actual facts of ownership.

It was competent for the court to allow the supplemental bill in the nature of a bill of review to be filed, because no final decree has yet been entered.

A decree is final only which finally adjudicates upon all the merits of the controversy and leaves nothing further to be done but the execution of it. Griffin vs. Orman, 9 Fla. 47; Story's Eq. Pl. sec. 408; Putnam vs. Lewis, & W., 1 Fla. 474.

And the mandate of the Supreme Court was for further proceedings.

A supplemental bill in the nature of a bill of review or possibly an original bill and not a bill of review is the appropriate remedy to have an interlocutory decree reversed. Putnam vs. Lewis, et al., 1 Fla. 455.

This before the act of 1883, Chap. 3430, as set forth

in Revised Statutes, secs. 1265 and 1414, which seems to contemplate amendments at any stage so as to truly set forth the facts in the determination of all civil causes.

The chancellor might allow, and the Supreme Court has the power to amend or to send back for amendment, where the case so made would warrant a decree for the complainant. Smith vs. Smith, 18 Fla. 794; 3 Paige, 440.

And the prayer of the petition was for the allowance of such pleading or amendment as will present the facts in support of the averments of the petition. (See petition, p. 8).

We asked to show by evidence not within our reach or control, and recently to us discovered, that we were not subject to the payment of the assessed taxes upon what is now our property. The facts are set forth in the petition, and are supported by the affidavit of the president of the petitioner's company. The proposition was to present "new matter discovered after the decree which could not have been used before the decree was made, and the case as made is strictly within the rule laid down in Mattair vs. Card, 19 Fla. 455.

If the court should hold that the decree is not a final decree then the pleading or bill which petitioner was allowed to file is a bill in the nature of a bill of review. Mattair vs. Card, 19 Fla. 455.

If it holds the decree to have been a final decree then the bill was properly allowed, and its proper title is a bill of review, or a bill in the nature of a bill of review. Ibid; 2 Dan. Chan. Pl. 1576; Finlayson vs. Lipscomb, 16 Fla. 751; Thompson vs. Maxwell, 16 Fla. 773-8.

18

The bill was properly allowed because the decree has not been carried into execution. 16 Fla. *supra*, p. 778. See also Putnam vs. Clark, 35 N. J. Eq. 145.

It may be contended that before being allowed to file pleadings for review petitioner must have complied with the decree, or must show inability to comply. The authority last quoted would indicate that such is not the rule in Florida. But in any event this rule is administrative rather than jurisdictional. Its purpose is to prevent abuse in the administration of justice by filing bills of review for delay or vexation, to the discouragement and distress of the adverse party. Kent's Commentaries, p. 108. And the rule is subject to exceptions. Ricker vs. Powell, 100 U. S. 104.

The petitioner had not paid the tax, which it is apparent to the court is abundantly secured, as it is only a percentage on assessed valuation. It in the most emphatic way disclaimed the purpose of thereby prolonging the litigation, or of causing delay and vexation to the adverse party.

But there is yet no decree to be complied with by affirmative action of petitioner. The case is not one of decree, to be entered at any stage, by which petitioner is required to do anything. The defendants have no cross-bill and no prayer for relief, and at the very utmost the decree to be entered finally against the petitioner is one dismissing its bill.

Such leave as petitioner asked is granted much, of course, if probable cause for filing bill is shown. Beach Mod. Eq. Prc., sec. 502; Eager vs. Price, 2 Paige, 333; Walker vs. Hallett, 1 Ala. 379.

Ordinarily the court examines the question only so

far as to see that it is not intended for vexation or delay. Beach, *supra*, sec. 492.

If review, and not supplemental bill lies, the filing rests in the sound discretion of the court, and where, as in this case, the ground is newly discovered evidence the court will hardly refuse the filing unless "looking to all the circumstances the court shall deem it productive of mischief to innocent parties, or otherwise inadvisable." Beach, *supra*, sec. 467.

There can be no mischief to innocent parties, and the court will hardly deem it inadvisable from other causes as the Comptroller of the State expresses his willingness that the inquiry should be made from a sense of right. (See modified letter of Comptroller to Attorney-General here submitted).

Were this a case where the direct issue had been made in the pleadings and evidence taken in the cause, upon which there was adverse decree and affirmance by the Supreme Court, it is right and proper that such findings should be reviewed and reversed in the interest of justice, upon the discovery of evidence that would sustain such reversal, and the only question about the allowance would be whether the party had been diligent in the search for the facts. This we submit was shown.

The demurrer was properly overruled.

The first ground of demurrer that the supplemental pleading avers facts not arising after the filing of the original bill but that happened prior thereto, and it is not alleged that they were discovered after it was too late to have presented them by way of amendment to the original bill, is not the ground assigned in the record, but a modification of it, because of the assumption of facts not supported by the record.

This modification does not relieve the situation.. Both in the petition sworn to by the president of the company and in the bill it is distinctly stated that the appellee was a stranger to the title of the F. R. & N. Company through its predecessors. That the State's contention of liability without regard to change of ownership for the taxes made statement of chain of title immaterial, and the most biased reading of the undisputed averments of the bill, from page 17 to 18, utterly refute the conclusion of fact in the demurrer that the appellee had any knowledge as to the matter which it could have exhibited in its original bill.

Where an essential fact appears by necessary implication such a statement of the fact is good against demurrer. Amestoy vs. Transit Company, 95 Cal. 314; Story Eq. Plead., sec. 452, N. 3; 1 Foster Fed. Pr., sec. 106; and in the cases cited by appellant in support of his proposition to assume allegations most strongly against the pleader in support of a tax to be collected out of a party not liable for it, suggestion is made that there can be no reading of the supplemental pleadings which assumes that the appellee had any knowledge of the matters here set up by supplement in time to have filed or presented the same in the original case which does not do violence to the English language.

And again, in support of second point in argument, appellants' counsel here, who also appeared and signed brief in this court before, and who is the counsel who it is alleged and admitted by the supplementary pleadings tried the original case on the theory that this appellee was liable for the tax in question notwithstanding the changed ownership between 1881 and 1885, quotes from the original bill (not before this court, and

not for consideration in this cause, except as intro-
duced into the supplemental pleadings in the record
made up under his direction).   He says that the alle-
gation, imperfect in itself, and necessarily so because
of the lack of knowledge of the 'pleader, contained
"*an important link in the chain of title*, etc.," and
then using the allegation of the supplemental bill,
which shows that, notwithstanding the sale as stated,
the purchasers, who are correctly stated in the latter
and who might inferentially be called the privies in
interest with the owner of the property in 1885, were
not admitted to the ownership of the property until
December, 1881.   He argues that the supplemental bill
was demurrable in that appellee's claim as to this part
of the road is founded upon title totally distinct and
inconsistent.   There is no fault with the authorities;
the contention is that the rule is not applicable in this
case.

If the original bill is before the court, which is de-
nied, we contend that therein the chain of title was
not an issue, whereas it is so here for the first time,
and made so for reasons that explain themselves as
stated.

These questions are not raised by the demurrer.   A
demurrer must be founded on a dry question of law,
which goes to the absolute denial of the relief sought.

Must not be a speaking demurrer, and can not in-
troduce new facts or averments for its support which
do not distinctly appear upon the face of the plead-
ings.   Ibid, 226; Story Eq. Pl., 9th Ed., sec. 448;
Brooks vs. Gibbons, 4 Paige, 374.

The court will not draw inferences of facts to sus-
tain demurrer if there are sufficient express averments
to support bill.   Werfield vs. Fish, 136 Mass. 219.

There is no inconsistent title in the supplemental bill from that of complainant in the original. The rule in supplemental bills is that they do not allow a case in utter and irreconcilable conflict with the grounds on which the original bill was based. But the court even then will give to the statements and grounds set out in the original bill a liberal construction so as to reconcile them, and might not refuse the plaintiff relief simply because some of the statements of the supplemental bill were in conflict with the statements in the original bill. Choteau vs. Rice, 1 Minn. 106; Story Eq. Pl., sec. 333 and notes; Mitf. Eq. Pl., by Jerency, 85-87.

As to conflict of title, both must be as to same title in the same person as stated in the original bill. But it would seem that the title in the party and not the chain of his holding is referred to, and because an original bill would be the remedy under the title of the objectionable supplemental proceeding. 1 Story Eq. 339; Beach Eq. 449, with authorities by each; Maynard vs. Green, 30 Fed. Rep. 645.

As to third ground on demurrer.

It is not as stated that the cases as introduced in original and supplemental bills are in irreconcilable conflict. If true, an original bill would lie. Shields vs. Barrow, 17 How. 130.

The next and most serious ground of demurrer is the doctrine of *res judicata*. This we submit is not raised properly by demurrer, and can not be made available except by plea, with privilege of traverse and enquiry.

But whether so or not, courts which delight in doing complete justice, untrammelled by technical rules, will scarcely close their doors against both parties who

seek investigation of issues not before raised or intended to be submitted, nor shut their ears to the facts offered, which, when produced, will show that the State is not entitled to recover one dollar from the appellee.

The doctrine of *res judicata* does conclude the parties on the issues which are really and directly involved. The appeal is from an interlocutory order made overruling a demurrer to a bill which says that the questions presented have never been really and directly involved in any issue before the courts.

Again, if it be contended that the issues have before been passed upon by the appellate court, it is submitted and shown by the record that they were not then issues of *material* importance, and are presented here in the supplemental pleading by way of material averment for consideration for the first time; and under the license of the mandate in remitting the cause for further proceeding according to right, justice, the judgment of the court and the laws of the State ought to be had, etc., the issue was allowable and proper to be thus presented.

A supplemental bill is authorized to bring before the court material matters, not before in issue, and which have been discovered with due diligence only after the cause was in that stage in which it can not be done by amendment. Hoffman Ch. Pr. 2d ed., 393; U. S. Eq. Rule. 57; Story Eq. Pl., 333, 920 & N. 1 p. 297, 335.

It may be filed after as well as before a decree. Woodward vs. Woodward, 1 Dick. 33; Leakens vs. Eldridge, 3 Story C. C. 307; Story's Eq. Pl., sec. 332 (10 ed.) 338.

Or after the appellate court has remanded the cause

for further proceedings.    Greer vs. Turner, 36 Ark. 17.

And supplemental pleadings in the nature of a bill of review has been permitted after an affirmance of a decree in parliament.    Story Eq. Pl., sec. 418–92; Mitford Eq. Pl., 88.

The new matter relates to the title of the whole of the railroad property at the time of the assessment, and directly and unequivocally avers want of ownership or privity with owners of the several entire lines in the years 1879–80 and 81.

There was no assessment in 1881 or 1882 and consequently no lien, and no notice of a right to levy a tax; and such continued to be the case until the several lines were by change of ownership consolidated in 1884 into the Florida Railway and Navigation Company, which in 1885 was assessed for the taxes of 1882–83 and 84, which was paid, and later assessed under special law for the taxes of 1879–80 and 81.

In the healthy state of the public mind, under whose fair treatment of capital and its control the development of public enterprises in the State were all had, the attempt of the political branch of the government to suppress facts and unjustly collect so large a sum of money from innocent parties would not have been thought of.

The power of the judiciary is invoked to stay the ruthless hands that would thus despoil a citizen because of the prejudice against its honest investment.

MABRY, J.:

After the decision of this court in this case on the former appeal (Bloxham, Comptroller, et al. vs. F. C. & P. R. R. Co., 35 Fla. 625, 17 South. Rep. 902), no

decree was entered by the Circuit Court under the mandate sent down, but leave was granted by that court and a supplemental bill in the nature of a bill of review was filed by appellee, the complainant in the original proceedings. It becomes necessary that we now determine whether such a bill was permissible, in the then status of the case, under the rules of practice in courts of chancery.

A supplemental bill, says Story (Eq. Pl. sec. 332), is "merely an addition to the original bill, in order to supply some defect in its original frame or structure. In many cases, an imperfection in the frame of the original bill, may be remedied by an amendment. Generally, a mistake in the bill in the statement of a fact should be corrected by an amendment, and not by a right statement of the fact in a supplemental bill. But the imperfection of a bill may remain undiscovered, while the proceedings are in such a state, that an amendment can be permitted according to the practice of the court; or it may be of such a nature, having occurred after the suit is brought, as may not properly be the subject of an amendment. By the practice of the court, no amendment is generally allowable, after the parties are at issue upon the points of the original bill, and witnesses have been examined. Nor is it generally allowable to introduce into the bill, by amendment, any matter which has happened since the filing of the bill. In such cases, a supplemental bill is the appropriate remedy. And such a supplemental bill may not only be for the purpose of putting in issue new matter, which may vary the relief prayed in the original bill; but also for the purpose of putting in issue matter which may prove the plaintiff's right to the relief originally prayed. Whenever a sup-

plemental bill is not a supplemental suit, but only introduces supplementary matter, the whole record constitutes but one cause; and one replication and one cause are to be set down for the hearing." Stafford vs. Howlett, 1 Paige 200; Straughan vs. Hallwood, 30 West Va. 274, 4 S. E. Rep. 394; Ledwith vs. City of Jacksonville, 32 Fla. 1, 13 South. Rep. 454. As to bills of review this court has approvingly quoted the statement of the rule in 2 Daniell's Ch. Pl. & Pr., 1575, as follows: "The object of a bill of review, and of a bill in the nature of a bill of review, is to procure the reversal, alteration or explanation of a decree made in a former suit. If the decree has been signed and enrolled a bill of review must be filed; if not, a bill in the nature of a bill of review." "A bill of this character can only be brought upon error in law appearing on the face of the decree without further examination of matters of fact, or upon some new matter which has been discovered after the decree, and which could not possibly have been used when the decree was made. If the bill is filed on the ground of error the decree complained of must be contrary to some statutory enactment, or some principle or rule of law or equity, recognized and acknowledged, or settled by decision, or be at variance with the forms and practice of the court, but the bill can not be maintained where the error is in mere matter of form, or the propriety of the decree is questioned." Mattair vs. Card, 19 Fla. 455. The note to the case of Brewer vs. Bowman, 20 Am. Dec. 158 (3 J. J. Marsh. 492), contains a discussion and review of authorities as to bills of review, their nature and scope. In the case of Putnam vs. Lewis and wife, 1 Fla. 455, an application was made to file a bill to review a decree in a partition suit as-

certaining the interests of the respective parties, and appointing commissioners to make the partition, and alleged to have been duly signed and recorded. A ground of the application was newly discovered evidence since the rendition of the decree. It was conceded that a bill of review lies only after a final decree, and it was held that the decree sought to be reviewed in the case was interlocutory and not final. The court said that the decree in this case, being interlocutory, a supplemental bill in the nature of a bill of review would seem to be the appropriate remedy." Citing 2 Johns. Ch. 490; 2 Atk. 40, 534; 2 Vesey Sr. 598; Mit. Pl. 71; 17 Vesey, 177.

The decision in Owens vs. Love and Bruce, Admrs., 9 Fla. 325, announces the rule that a bill of review lies only after final decree, and not upon an interlocutory decree. It was there held that after an interlocutory decree has been enrolled the court will grant leave to file a supplemental bill, to bring forward newly discovered evidence, and grant a rehearing upon the same if the evidence is of such a nature, as were it a bill of review, would entitle the party to relief. The court said, "Had the application in this petition been but for a review reversal, and setting aside said decree (being interlocutory), then the case of Pitman vs. Lewis and wife would be applicable, which decided that a supplemental bill in the nature of a bill of review would seem to be the appropriate remedy." The view taken in the opinion that a bill in the nature of a bill of review is not of use in this State has been disapproved. Finlayson vs. Lipscomb, 15 Fla. 558. Supplemental bills and bills of review, the nature and scope of which are discussed by the authorities cited, have an admitted application, under a proper state of

facts, to cases in the lower court, and where a case is pending or disposed of by a chancellor there is no obstacle in the way of his permitting the use of such bills, in proper cases, to affect his own decrees. But other considerations are involved where such bills are resorted to after the decree of the chancellor has been passed upon by the appellate court. We do not find any direct adjudication on this point in this State. In the cases of Putnam vs. Lewis and wife and Owens vs. Love and Bruce, Admrs., the decrees sought to be modified had not been before the appellate court. Finlayson vs. Lipscomb, 16 Fla. 751, presents a case where a supplemental bill in the nature of a bill of review was permitted to be filed by the chancellor after the reversal by this court of an order granting a rehearing upon the rendition of the decree, and before enrollment, but we find in the opinion upon the reversal that it was pointed out that the proper remedy, if any existed, was by supplemental bill in the nature of a bill of review, and the reversal was without prejudice to an application for other appropriate proceedings. Finlayson vs. Lipscomb, 15 Fla. 558. There is no difficulty where the appellate court expressly authorizes such proceedings.

When the bill was filed in the case of Mattair vs. Card, 19 Fla. 455, a former decree between the same parties relating to the same subject-matter had been affirmed on appeal—18 Fla. 761—and while the professed object of the second bill was to annul and set aside the former decree, it proceeded, in total disregard of the rules applicable to bills of review to re-litigate matters supposed not to have been involved in the first suit. The court decided that a bill to procure the reversal, alteration or explanation of a decree

made in a former suit, except for fraud in obtaining it, was by bill of review, and no such fraud being shown, it was determined that all the grounds of relief set up in the second bill were involved, and necessarily submitted for consideration, in the first suit. In speaking of one ground of the defense the court say "the question whether the mortgage was valid to create a lien upon the property because of the omission of words of grant or conveyance by S. R. Mattair in the body of the instrument was necessarily submitted to the court at the hearing before the chancellor, and determined, whether it was made a ground of objection at the time or not. The decree necessarily determined that the paper was a valid mortgage, and directed its enforcement as such. The decree was affirmed on appeal, and though the question of its sufficiency was not raised upon the appeal, the affirming of the decree places the question beyond the reach of review here." The opinion does point out defects in the bill viewed as one of review; but the question as to whether the lower court can permit, under any circumstances, a bill of review, or bill in the nature of a bill of review, to be filed to modify a decree affirmed or directed to be entered by the appellate court, either on questions of law or facts, was not considered by the court, and evidently not designed to be decided. We are of the opinion that when the Supreme Court on appeal affirms the decree of the Circuit Court, or when such a decree is modified on appeal either as to questions of law or fact necessarily involved, with directions for further proceedings consistent with the opinion, the Circuit Court has no authority to open the case for a new trial, or to enter any other judgment than that directed to be entered, unless authority to

do so is expressly given by the appellate court. Any other rule than this seems to us to be entirely inadmissible. Sections 1277 and 1278 Rev. Stat. provide as follows, *viz:* "It shall be the duty of the court on an appeal or writ of error to examine the record, to reverse or affirm the judgment, sentence or decree of the court below, or to give such judgment, sentence or decree as the court below ought to have given, or as to it may appear according to law." "The appellate court may order the record of the judgment appealed from, with its decision and determination thereon in writing duly certified, to be remitted to the court from which the writ of error shall have been taken, and the said decision and determination shall be carried into execution by the officers of said court, *a quo*, or the appellate court may award executions to carry into effect its decision and determination." Under this authority, and as to chancery causes it may be independent of such legislation, when the appellate court has examined the record of a cause and affirmed the decree appealed from, or has modified or reversed such decree with directions as to the decree to be entered, whether the decision was on questions of law or fact it is not the province of the court, *a quo*, to allow further proceedings, but the judgment and mandate of the Superior Court must be obeyed. We confine ourselves at present to the case of an affirmance, or reversal or modification of the decree with directions for further proceedings consistent with the opinion, as it is not necessary to say what would be the effect of a mere reversal without further directions. This conclusion is sustained by the views of Chancellor WALWORTH in the case of Stafford vs. Bryan, 2 Paige, 45, in which

he took the view that a court of chancery can not entertain a bill in the nature of a bill of review upon the ground of newly discovered facts, to review a decree which had been affirmed in the court for correction of errors, unless such right has been expressly reserved. *Vide* also Lyon vs. Herritt, 6 Paige, 473. The same view was entertained by WRIGHT, J., in Kinsell vs. Fieldman, 28 Iowa, 497. The doctrine of the Supreme Court of the United States is in favor of the same view. The point was directly decided in the case of Southard vs. Russell, 16 How. 547. The court said "as already stated, the decree sought to be set aside by this bill of review in the court below was entered in pursuance of the mandate of this court on appeal in the original suit. It is therefore the decree of this court, and not that primarily entered by the court below, that is sought to be interfered with. The better opinion is, that a bill of review will not lie at all for errors of law alleged on the face of the decree after the judgment of the appellate court. These may be corrected by a direct application to that court, which would amend, as matter of course, any error of the kind that might have occurred in entering the decree. Nor will a bill of review lie in the case of newly discovered evidence after the publication of decree below, where a decision has taken place on an appeal, unless the right is reserved in the decree of the appellate court, or permission be given on an application to that court directly for the purpose. This appears to be the practice of the Court of Chancery and House of Lords, in England, and we think it founded in principles essential to the proper administration of the law, and to a reasonable termination of litigation between parties in chancery suits." That court has acted

on the same rule in other cases.   Tyler vs. Magwire, 17 Wall. 253; Mackall vs. Richards, 116 U. S. 45, 6 Sup. Ct. Rep. 234; Skillern's Executors vs. May's Executors, 6 Cranch, 267.   Some text writers state that it would seem from the decision in Barbon vs. Searle, 1 Vernon, 416, that for matter newly discovered after decree affirmed in the House of Lords, a bill of review might be allowed.   We have examined the case and do not see that it sustains the inference drawn.   After a decree dismissing a bill had been affirmed in the House of Lords, a bill was filed for discovery, and after the discovery that plaintiff might apply ·to the House for leave to proceed.   An answer was required, but it was distinctly recognized that the decree of the Lords could not be interfered with unless they permitted the suit for that purpose, and any further proceedings than the discovery were suspended until leave was obtained.   Decisions in the States of South and North Carolina and Missouri, also fully sustain our conclusion.   *Ex parte* Knox, *In re* Cothran vs. Knox, 17 S. C. 207; Ibid 13 S. C. 496; N. C. R. R. Co. vs. Swepson, 73 N. C. 316; Hurck vs. Erskine, 50 Mo. 116; Chouteau vs. Allen, 74 Mo. 56.   It is said in Greer vs. Turner, 36 Ark. 17, that "the usual directions on remanding a cause, when this court deems it advisable to remand at all, are for further proceedings consistent with the law declared, and facts found, by the ·written opinion.   This becomes the law of the case, and as to facts found, *res judicata.* · Consistently with these it is not generally intended to trammel the proper courts of original jurisdiction, by precluding them from any steps which may be within the proper scope of the suit, and necessary to complete justice between the parties in reference to its subject-matter."   Out-

side of the matters directly adjudicated, it seems in that State, a plaintiff may by supplemental bill, after the return of the cause to the lower court, bring forward new matter occurring since the final submission of the cause in the Circuit Court. It should be conceded, we think, that decisions in Virginia, Kentucky, New Jersey and Georgia go to the extent of sustaining the authority of the lower court to permit a bill of review on the ground of newly discovered facts without leave from the appellate court, after the case has been decided in the latter court, but the preponderance of authority is, we think, clearly the other way. In our opinion the Circuit Judge should have entered a decree under the mandate sent down and not permitted the case to be opened by the supplemental bill allowed to be filed. A mandate of this court should be construed with reference to the opinion delivered in the case, and from the opinion filed it will be seen that the decree was affirmed in part with modifications, reversed in part with directions in the mandate for further proceedings according to right, justice, the judgment of this court, and the laws of the State of Florida. This mandate stated the particulars in which the former decree was changed, and clearly contemplated that a new and different decree should be entered than that rendered by the Circuit Court. We quote from the opinion in *Ex parte* Knox, in Cothran vs. Knox, *supra*, as follows on this point: "When the judgment of the Circuit Court is simply affirmed, it may seem that the judgment in the cause in which it is rendered is only a judgment of the Circuit Court unrevoked; to reverse a judgment of the Circuit Court may perhaps mean something more than

merely to annul or set it aside; but when a judgment of the Circuit Court is modified by the Supreme Court it is certainly a new judgment with different provisions from the Circuit Court judgment. While such a judgment is the final judgment in the case, it is difficult to see how it is merely the judgment of the Circuit Court. It is made, as in the case now under consideration, in the Supreme Court, and is made by an authority paramount to and which overrides the Circuit Court. This judgment of the Supreme Court is remitted. not to be reheard in, but to be enforced by the Circuit Court according to law.''

An appeal might have been taken from the order of the court granting leave to file the supplemental bill in the nature of a bill of review, instead of entering judgment under the mandate as should have been done. but as the supplemental bill alleges the proceedings in the former suit, including the appeal to this court, the decision and mandate issued, it may be disposed of on demurrer, and the court should not have overruled it. We can not sanction such a departure from precedent as was allowed by the Circuit Judge. This conclusion removes from consideration the merits of the bill, if it had been properly filed, and other matters discussed in the briefs.

The petition for leave to file a supplemental bill in the nature of a bill of review, considered in connection with the bill permitted to be filed in the lower court, can not be regarded as affording any sufficient ground for reviewing the judgment directed to be entered by this court under its mandate, if it had been entered, beyond the exemption of taxation in question of the line of railroad from Jacksonville to Chattahoochee. The view announced in the former opinion in this case

was that when the time for the assessment and collection of taxes has passed, and the taxing statute affixes no lien on the property, and the State has made no assessment, or taken any other steps to collect the same, real estate can not be pursued for back taxes when it has gone into the hands of an innocent purchaser for value. If, as a matter of fact, as claimed in the petition filed in the lower court for leave to file the supplemental bill in the nature of a bill of review, and in the bill filed, the line of road from Jacksonville to Chattahoochee went into the hands of an innocent *bona fide* purchaser before the State proceeded to collect taxes for years prior to such purchase, it would be inequitable and unjust to demand them. Whether appellee, or its predecessor, was such purchaser, or, if so, whether it can now avail itself of such defense, we do not now decide, as the Circuit Court had no authority to permit to be filed or to consider any supplemental bill in the nature of a bill of review. This court has the power in awarding a judgment on appeal, whether of affirmance or reversal, to authorize a bill of review to be filed in the lower court, and this was done in the case of Finlayson vs. Lipscomb, 15 Fla. 558, without any direct application for that purpose. From the consideration of that case, then on appeal, it appeared to the court that appellant had mistaken his remedy, if he had any, and the court reversed the decree without prejudice to resort to another course, which was pointed out to be a supplemental bill in the nature of a bill of review. In our opinion this court also has the power on an independent petition filed for that purpose, after a mandate on a former appeal has been issued, and lodged in the lower court and a judgment entered to grant leave to

file a bill of review of the judgment entered. *In re* Gamewell Fire Alarm Tel. Co. *et al.*, 73 Fed. Rep. 908, 20 C. C. A. 111. In neither case should leave be granted to file a bill of review as a matter of course, but the power of this court should be exerted in this direction only when, in the exercise of a sound legal discretion, it appears that good and sufficient grounds exist for filing such a bill. Where the application is made on the ground of newly discovered matter the questions of the materiality of the alleged new matter and laches both will arise, and this court must be satisfied that a sufficient ground exists before leave will be granted to file a bill of review of a judgment directed by it to be entered. In the present case no judgment has yet been entered under the mandate sent down in the former appeal, and the case is now before us for further directions. It is clear from the record that appellee is seeking to review the former decision made in this case on the ground of newly discovered matter since the decision, and it is also evident from what has been said that a mistake has been made as to the proper course in accomplishing this object.

We are satisfied from the entire record before us that there is sufficient shown to authorize this court to grant leave to appellee to be heard on an application in the Circuit Court to file a bill of review of the judgment when entered, to the extent of the line of railroad and branches from Jacksonville to Chattahoochee, formerly known as the Florida, Central and Western Railroad Company, and, after a careful examination of all that has been disclosed, we are of opinion that justice required that an order be made in this court granting permission to appellee to be fur-

ther heard in the Circuit Court to the extent mentioned on account of the alleged newly discovered matter.

The decree overruling the demurrer will be reversed and the cause remanded with further directions that the Circuit Court dismiss the supplental bill in the nature of a bill of review and enter a final decree in accordance with the former judgment of this court upon which a mandate will again issue, and an order will be entered here permitting appellee, within ninety days after the decree is entered, to apply to the Circuit Court for leave to file a bill of review to the extent of the line of railroad mentioned in the decree from Jacksonville to Chattahoochee and branches.

Ordered accordingly.

CARTER, J., *dissenting:*

I regret that I find myself unable to agree with the majority of the court in that portion of the opinion which directs the entry of an order here permitting appellee to apply to the court below for leave to file a bill of review as to certain lines of railroad in the opinion mentioned. I concur fully with the views announced in the opinion, that no bill of review or bill in the nature of such can be filed in the lower court, to charge or modify a final decree which has been affirmed, or directed to be entered by this court, without leave of this court first obtained. And it follows that if a bill of this character can not be filed without such leave, that the leave should not be granted as a matter of course. The rule requiring leave is not founded upon an imperative statute or rule of court, but it springs from the inherent authority and dignity attaching to judgments of an appellate court, to prevent conflicts in jurisdiction between appellate and inferior

courts and from that principle of jurisprudence which requires that somewhere, within reasonable limits, litigation shall end.    Southard vs. Russell, 16 How. 547. The decision of the highest appellate court, affirming a judgment, or directing the entry of a certain judgment, is presumptively the end of litigation in that particular case; and before granting leave to continue the litigation in the court below by a bill of review, this court should require the party applying for leave to show, *prima facie*, at least, a right to have the decree reviewed.    I do not regard the case of Finlayson vs. Lipscomb, 15 Fla. 558, as authority for the position that this court should give permission to file a bill of review, in awarding judgment on appeal, without a direct application for such leave, or as holding that it has the power to do so.    In that case, which was an appeal from an order granting a rehearing only, the court reversed the decree "without prejudice to an application, if deemed advisable by the parties, for other appropriate proceedings."    This expression, "without prejudice," simply had the effect of divesting the judgment of the quality of *res judicata*.    2 Daniell's Chy. Pl. & Pr. 994.    It meant that the position of the losing party was not to be unfavorably affected by the judgment, but that his rights were to remain as they then stood.    Creighton vs. Kerr, 20 Wall. 8.    It simply left the parties in the same situation as if the petition for rehearing had not been filed.    Epstein & Bro. vs. Ferst & Co., 35 Fla. 498, 17 South. Rep. 414. It did not undertake to grant the parties leave to file a bill to review any judgment that had been affirmed or modified *by this court*, for the case had never been to this court before.    It is useless to discuss this question, however, for the majority of the court do not

grant the leave simply because they have the power; they expressly state that it should not be granted as a matter of course, but in this case because "in the exercise of a sound legal discretion, it appears that good and sufficient grounds exist for filing such bill." It is further held that where the application is made on the ground of newly discovered matter, the questions of the *materiality* of the alleged new matter and *laches* both will arise, and this court must be satisfied that a sufficient ground exists before leave will be granted, and that there is sufficient in the entire record in this case to so satisfy the court. In discussing this question I shall confine myself entirely to cases of review for newly discovered evidence, or matter, as that is the only question involved. This court has held that "to entitle a party to relief in such cases the newly discovered evidence must be relevant and material, and such as might probably have produced a different determination. The new matter must have *first* come to the knowledge of the party *after* the decree. The matter must not only be new, but it must be such as the party, by the use of *reasonable diligence*, could not have known. It must not be merely cumulative, nor merely corroborative or auxiliary to what is already in the case; but must establish a new fact of itself decisive of the merits of the cause." Owens vs. Forbes, 9 Fla. 326; Finlayson vs. Lipscomb, 16 Fla. 751. In the latter case a doubt is expressed whether mere verbal testimony is new matter within the meaning of the authorities; and as to that point I now express no opinion, but will consider the case upon the theory that such testimony may constitute new matter. And the rule is universal that upon application to file a bill of review of this nature the application must show that

the new matter has come to the knowledge of the appli-cant and his agents for the *first* time *since* the period at which he could have made use of it in the suit, and that it *could not with reasonable diligence*, have been discovered sooner, and that it is of such a character that if it had been brought forward in the suit, it probably would have altered the judgment; 2 Daniell's Chy. Pl. & Pr. page 1578; 2 Beach Modern Equity Practice, secs 860, 862 and 868; 3 Ency. Pl. & Pr., 587; Story's Eq. Pl. sec. 412 *et seq.;* and the same au-thorities are equally unanimous in requiring an affi-davit to these matters, upon the application for such leave. This being true, I do not think this court can consider the matters alleged in the supplemental bill found in the record; because it is not sworn to; neither does the petition to the court below for leave to file the bill contain any statement that the matters alleged in the supplemental bill are true. I state this, be-cause there are many important allegations in the sup-plemental bill, which do not appear in the petition and such matters are improper to be considered. Buckingham vs. Corning, 29 N. J. Eq. 238.

In order to a full understanding of the case before this court, it will be necessary to refer briefly to the original bill and proceedings thereon. The original bill filed November 2, 1892, was sworn to by Col. John A. Henderson, Vice-President of, and attorney for, the complainant corporation, the affidavit stating that "he has read the foregoing bill of complaint and knows the contents thereof; that the same is true as to all matters stated therein upon knowledge, and that as to all statements on information and belief therein made, he believes them to be true." No allegations in the bill purport to be made upon information and be-

lief, except that the sheriff will sell the property of complainant levied upon by him unless enjoined by the court. According to the sworn allegations of the bill, as found by this court on the former appeal, the line of railroad from Jacksonville to Chattahoochee, with branches, was acquired by Edward J. Reed and associates in September, 1879, at a foreclosure sale in behalf of the State against the Jacksonville, Pensacola and Mobile Railroad Co., and Reed and associates owned and operated the property until February 8, 1882, when they organized a corporation under the name of Florida, Central and Western Railroad Co., and conveyed the property to that corporation on February 28, 1882 (35 Fla., text page 722). In the original bill of complaint the distinct claim was made that the complainant was an innocent purchaser of this particular property for value; and also that it succeeded to the rights of exemption from taxation, supposed to have been granted to the original owners of the railroad then owned by complainant, and in order to sustain these claims. the bill undertook to trace the titles direct from the original owners, through successive ones, to the complainant. The original answer of the defendants was excepted to by complainant in February, 1893, because the defendants had not answered to the best of their knowledge, among other things, whether the several conveyances and transfers of this particular branch of complainant's road were not as alleged in the bill; and such exceptions being sustained the defendants on information and belief admitted the allegations of the bill to be correct. An agreement was made November 13, 1893, between the counsel for the respective parties, that if the court below should refuse the application of complainant for an

injunction that day made against a sale for the taxes of
1879, 1880 and 1881, that thereupon a decree should be
rendered dismissing the bill, "this without prejudice
as to the exercise of the full discretion of the court;
and a final decree upon the merits may also be entered
herein in accordance with its findings." The effect of
this agreement was to submit the case upon bill and
answer. On November 25, 1893, the decree was en-
tered in the court below, and the decree was in favor
of complainant as to the taxes of 1879, 1880 and 1881.
On March 19, 1895, this court filed an opinion revers-
ing the decree as this particular matter, which is re-
ported in 35 Fla. 625, 17 South. Rep. 902. In May,
1895, a petition for rehearing was filed, signed by the
same solicitor for complainant, in which it is said that
the court erred in its conclusion as to the facts of the
history of the railroads and their changes of owner-
ship; that while it is true as alleged in the bill that
the sale of the roads from Jacksonville to Chattahoo-
chee was made in 1879, and the property deeded to the
Florida Central and Western Railroad Company, in
1882, "*if it had been anticipated* that the articles of
association of the Florida Central and Western Rail-
road Co., (not in the record) would have been consid-
ered in *either court* for the purpose of showing the
connection of the purchasers with the taxed property
for the years 1879 to 1881, *the facts would have been
made to appear* that the sale of 1879 was not confirmed
until 1882, and that the *purchasers* at such sale were
*not let into the possession* of the property before con-
firmation." It is difficult for me to see how these
matters could have been made to appear *in the Cir-
cuit Court*, if they have only been discovered *since* the
decree was rendered. By reference to the articles of

Bloxham, Comptroller, etc., v. F., C. & P. R. R. Co.—Dis. Opinion.

incorporation of the Florida Central and Peninsular Railroad Co. it will be seen that Col. Henderson was one of the incorporators of, and a director in, the company; and he is now vice-president of, and attorney for, the company in this case, and it needs no citation of authority to show that if he knew, or could by reasonable diligence have known, of these facts before the decree was pronounced, the company would not be allowed to file a bill of review. Furthermore, in his brief filed in this court July 17, 1894, Col. Henderson shows a thorough knowledge, not only of every act of the Legislature touching the ownership, or taxation of the railroads now owned by his company, but of every decision of this court and of the United States Courts, affecting the title to, or right of exemption from taxation of such railroads, therein referring to the case of Schutte *et al.* vs. The Florida Central, and Jacksonville, Pensacola and Mobile Railroads as being pending continuously from a certain period to May 31, 1879, when it is stated by him that a decree was entered, which passed to a judicial sale *January 10, 1880*, and the property purchased by Sir Edward J. Reed for associates who organized the Florida Central and Western Railroad. The case referred to by him was appealed to the Supreme Court of the United States and the decrees affirmed. 103 U. S. 118. Again on page 14 of his brief he says ''and the lines of railroad from Jacksonville to River Junction, with branches from Drifton to Monticello, and from Tallahassee to St. Marks, upon which the taxes, as a part of the assessments were made in 1885 for the years 1879, 1880 and 1881, *were for those years* and until January *10, 1881*, the property of a railroad company known as the J. P. & M. R. R. Co., on which last named day the

said *lines of railroad* were sold at judicial sale, un-
der foreclosure proceedings and were bought by Sir
Edward J. Reed, who organized a corporation    *    *
* which afterwards and until the consolidation of
1884, continued to own and hold such lines of
railroad." There is nowhere in this record any
affidavit from Col. Henderson that he did not know
of the matters set forth in the petition found in the
record prior to the rendition of the decree in the lower
court. This petition, it will be observed, is sworn to
by Mr. H. R. Duval, the company's president from
the time of its organization. In this petition it is
stated that the Supreme Court "reached its conclusion
that any portion of this property was in 1885 in the
same possession as in 1879, 1880 and 1881, or in that of
their privies, by a wholly mistaken view of facts not
in issue in the case as submitted, and upon an inter-
pretation of the statements of the bill that is entirely
at variance with the facts as they existed and the un-
derstanding and purport of such statements at the
hearing below, by which the court above found that a
portion of said property, to-wit: the railroad from
Jacksonville to the Chattahoochee river, with branches,
was owned and operated by Edward J. Reed and asso-
ciates from September, 1879, to February 8, 1882, when
they organized a company known as the Florida Cen-
tral and Western Railroad Company; whereas, the
truth and facts are "in substance that from Septem-
ber, 1879, to January 6, 1882, all that portion of com-
plainant's railroad between Lake City and Chattahoo-
chee was owned by the J. P. & M. R. R. Co., and was
operated by Sherman Conant and A. B. Hawkins, re-
ceivers of the United States Court, who retained pos-
session and received the profits until January, 1882,

when H. R. Jackson, Charles H. Simonton and Adolph
Engler, as purchasers at the sale of 1879, were admit-
ted to the ownership of the road; and that Edward J.
Reed and his associates were not owners or possessed
of the property or in any manner interested therein
until after January, 1882; and also that portion of the
road lying between Lake City and Jacksonville was
owned and possessed by the F. C. R. R. Co. up to
January 6, 1882, when it was purchased by Edward J.
Reed, who, for the first time, became possessed of the
line of road after the confirmation of such sale." And
the petition then proceeds: "And in like manner as
to the lines of railroad from Fernandina to Cedar Key,
and Waldo to Ocala, for the lack of direct informa-
tion, and because of petitioner's being, as aforesaid,
an entire stranger to the transactions and changes of
title preceding the creation of the Florida Railway and
Navigation Company and its investiture of the pos-
session of the railroad property, coupled with the fact
that all records of the judicial proceedings and sale
thereunder and herein anywhere referred to had been
destroyed by fire." From these extracts it can be
readily seen that the principal complaint of the peti-
tioner was that *this court had erred in its decision*
by taking "a wholly mistaken view" *of facts not in
issue* in the case submitted, and by giving an *errone-
ous interpretation to the statements of the bill* that is
entirely at variance with the *true* facts and entirely at
variance with the *understanding* and *purport* of such
statements of the bill at the *hearing below*. It is per-
fectly clear that a bill of review will not lie to correct
errors of this character, because such errors are only
remediable upon a petition for rehearing in this court.
Such a petition has been filed and denied, and it is

now beyond our power to authorize the correction of this error, if it exists, by bill of review. Contee vs. Lyons, 19 D. C. (8 Mackey) 207. I know of no power in an inferior court to correct mere errors of law and fact committed by an appellate court by a bill of review. It is also alleged that this court arrived at its conclusion of fact by giving an erroneous interpretation to the *statements of the bill*, wholly at variance with the *understanding* and *purport* of such statements at *the hearing below*. If the petitioner at the hearing below understood the statements of the bill to mean that the Jacksonville, Pensacola & Mobile Railroad Co. were in possession of the line of road from Jacksonville to Chattanoochee up to 1882, as is implied in this statement, then it must have known this fact prior to the hearing and at the time of preparing its bill, and the matter is not, therefore, newly discovered, within the meaning of the rule. Something is also said about a "lack of direct information" and because petitioner was "an entire stranger to the transactions and titles preceding the creation of the F. R. & N. Co.," and that all records of the judicial proceedings and sale thereunder had been destroyed by fire; but it is nowhere alleged that these matters existed prior to the hearing below, or that they contributed in the slightest degree to prevent the appellant from acquiring a knowledge of the facts prior to the hearing. The entire statement is incoherent and incomplete. The petitioner may have been an entire stranger to the transactions and the records may all have been destroyed, and yet the petitioner may have had notice of the contents of the records, and may have been advised of the transactions and titles preceding the creation of the Florida Railway & Nav-

igation Co., *before the hearing* of the case below; and if so, it could not maintain this bill.　It may not have had *direct* information, and yet sufficient *indirect* information to lead it by the exercise of reasonable diligence to have obtained direct information before the hearing.　It was further stated that the allegations of the bill as made *originally* (November, 1892) were made by petitioner a corporation, who had no existence at the time of the transaction referred to, nor at the time of making the assessments complained of but was formed to own and operate the railroad properties that had been purchased by people at a judicial sale in 1887, who were unfortunate creditors of the previous owner, and who were entire strangers to the property prior to their purchase, so that petitioner was not informed of the real facts as stated in the petition, was not advised of their materiality, nor put upon notice of the importance in value of a statement thereof as a deraignment of title by any issue raised in the pleadings.　All these facts may be true, and yet petitioner may have known the true facts before the *hearing.*　The statement that the allegations of the bill as originally made were made by a corporation who had no existence during the transactions referred to; nor when the assessment was made; or that petitioner was formed to operate railroad properties which had been purchased by unfortunate creditors, who were strangers to the property prior to such purchase, are not equivalent to an allegation that petitioner did not know of the matters set up in the petition prior to the hearing; neither would an allegation that such matters were unknown to petitioner when the *original bill was filed,* if such fact was alleged, be equivalent to an allegation that at the *time of the*

*hearing* it did not know of such fact. It was further alleged that petitioner *now* knows that no party in interest in the Florida Railway and Navigation Co. that, in 1885 at the date and time of the assessment, held and owned the whole of petitioner's railroad then in existence, had one dollar in value, or any interest of any kind, in the lines of railroad in 1879, 1880 or 1881; but it is nowhere alleged that petitioner did now know the same facts *prior* to the hearing, or that it has discovered same since the hearing. There is nowhere in this petition an allegation that the new matter has come to the knowledge of the petitioner and its agents for the *first* time since the period at which it could have made use of it in the suit, nor that the matters could not with reasonable diligence have been discovered sooner. The date of its first knowledge on the subject is not given; nor the date of the fire which destroyed the records referred to. It gives the names of the receivers of the U. S. Court, Sherman Conant and A. B. Hawkins, but no affidavit is offered from them. It gives the names of the purchasers, Henry R. Jackson, Charles H. Simonton and Adolph Engler, but it presents no affidavits from them. It does not show that any diligence was exercised to procure information from any of these persons, nor show an excuse for failing to do so. Mr. Engler was one of the purchasers at the sale of 1879, must have known that he did not take possession of the road until 1882, and yet he was one of the original charter members of petitioner corporation and a director therein, as shown by the articles of incorporation on file in the office of the Secretary of State. It is nowhere disclosed how the petitioner or its predecessors secured the property from Edward J. Reed and associates, or how he secured ti-

tle, notwithstanding the statement in the original bill that he purchased at the sale of 1879 which is denied by the petition. It is not shown that any inquiries were even made of petitioner's predecessors, or any effort made to ascertain the facts in any manner. My conclusions herein I think are fully sustained by the authorities. Ryerson vs. Eldred, 23 Mich. 537; Greer vs. Turner, 47 Ark. 17, 14 S. W. Rep. 383; Kern vs. Wyatt, 89 Va. 885, 17 S. E. Rep. 549; Schaefer vs. Wundurle, 154, Ill. 577, 39 N. E. Rep. 623; Bartlett vs. Gregory, 60 Ark. 453, 30 S. W. Rep. 1043; Traphagen vs. Voorhees, 45 N. J. Eq. 41, 16 Atl. Rep. 198; McGuire vs. Gallagher, 95 Tenn. 349, 32 S. W. Rep. 209; Mattair vs. Card, 19 Fla. 455.

As to whether the matters set forth in the petition or supplemental bill are sufficient to constitute the pe titioner an innocent purchaser for value within the meaning of our previous decision, I express no opinion at this time.

I am deeply impressed with the importance to the petitioner of the questions sought to be raised by it in the proposed bill of review; but upon the whole record it seems to me that the real grievance of petitioner is that this court may have committed an error in its former decision on the facts. If the court did commit an error, it is now conclusive upon us, unless relief be sought in some manner recognized by the law as appropriate. We are not justified in correcting one error by committing another, however meritorious the claim may be. If I am correct in my conclusions, that the case presented is insufficient to sustain a bill of review, it follows that leave to file one should not be given, because such course would only entail addi-

:306 SUPREME COURT.

F. C. & P. R. R. Co. v. Ocala Street & Sub. R. R. Co.—Syllabus.

:tional delay, trouble and expense upon the parties, and prolong the litigation indefinitely, to no useful :purpose.